# In the United States Court of Federal Claims

No. 15-833C
(Originally Filed October 29, 2015)
(Re-Filed November 6, 2015)[1]

* * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| FCN, INC., | Bid Protest; Pre-Award; Judgment on Administrative Record; Best Value Tradeoff; Competitive Range; FAR 15.402(a); FAR 15.306(c) |
| *Plaintiff,* | |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |

* * * * * * * * * * * * * * * * * * * * * *

*William T. Welch*, Reston, VA, for plaintiff.

*Kara M. Westercamp*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Deborah A. Bynum*, Assistant Director, for defendant. *MAJ Jamal A. Rhinehardt*, of counsel, for defendant.

---

OPINION

---

BRUGGINK, *Judge*.

This is a pre-award protest of a solicitation for commercial information

---

[1] This opinion was originally filed under seal. The parties were directed to confer and propose redactions. The court adopted the parties' suggested redactions, removed the information, and inserted brackets to replace the redacted content. The opinion is now prepared for release.

technology ("IT") hardware for client, server, storage, and network environments, along with related incidental services, referred to as the Information Technology Enterprise Solutions-3 Hardware procurement ("ITES-3H"). Plaintiff, FCN, Inc. ("FCN") challenges the decision of the United States Department of the Army, Army Contracting Command-Rock Island ("the Army" or "the Agency") not to include FCN in the competitive range for the procurement. Currently before the court are the parties' cross-motions for judgment on the administrative record ("AR") pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). The motions are fully briefed, and we heard oral argument on October 27, 2015. For the reasons explained below, we deny plaintiff's motion for judgment on the administrative record, and we grant defendant's cross-motion for judgment on the administrative record.

BACKGROUND

I. The ITES-3H Solicitation

The Army issued the Request for Proposal ("RFP") for the IT services on September 25, 2011. The solicitation will result in the award of multiple Fixed Price Indefinite Delivery/Indefinite Quantity ("IDIQ") contracts, with a maximum amount of orders placed under each contract not to exceed $5,000,000,000 over a five year period. The RFP provides that proposals will be evaluated in a two-phase evaluation process. AR 3. Phase I, under which proposals were submitted on or before October 22, 2012, involved the evaluation of the offerors' proposed equipment list and web-based support capabilities/data, and was evaluated on an Acceptable/Unacceptable basis. AR 3, 126. Only offerors receiving an "Acceptable" under Phase I were allowed to participate in Phase II. AR 126.

Phase II establishes a competitive range after evaluation of the proposals advancing beyond Phase I. The Phase II evaluation is based on consideration of three factors: (1) Mission Support, which is divided into subfactors of Management, Technology, and Small Business Participation; (2) Past Performance; and (3) Price. AR 127. Phase II, the subject of this bid protest, is evaluated using a "Best Value Tradeoff" process. AR 138. This type of evaluation allows the Agency to award the contract to an offeror other than the lowest price offeror or highest technically rated offeror. AR 450. When considering the relative weight of the factors, mission support is more important than past performance, and past performance is more important than

price. AR 175. As part of the evaluation, the Army identified strengths, deficiencies, weaknesses, significant weaknesses, and uncertainties for each proposal. AR 128-29. Any offeror receiving a "deficiency" in any factor is ineligible for a contract award. AR 138.

The management subfactor evaluates the offeror's proposed management of the contract, timely delivery of reliable products, equipment warranty, and customer support. AR 131. The offeror is also required to identify its teaming partners and the commercial quality certifications or process it proposes to use to meet contract requirements. *Id.*

The technology subfactor requires the offeror to show how it will develop and maintain a list of compliant products and how it will maintain "thin client"[2] user configurations. AR 132. The small business participation subfactor requires offerors to identify the extent to which various small businesses would participate in the contract as well as the offerors' past small business participation. *Id.*

Between the three subfactors, management is more important than technology, and technology is more important than small business participation. AR 2006. As a whole, mission support would be rated by the following standards:

> Outstanding: Proposal meets requirements and indicates an exceptional approach and understanding of the requirements. Strengths far outweigh any weaknesses. Risk of unsuccessful performance is low.
>
> Good: Proposal meets requirements and indicates a thorough approach and understanding of the requirements. Proposal contains strengths which outweigh any weaknesses. Risk of unsuccessful performance is very low.
>
> Acceptable: Proposal meets requirements and indicates an adequate approach and understanding of the requirements. Strengths and weaknesses are offsetting or will have little or no

---

[2] We presume the agency was not concerned with how much users weigh, as the record contains no clues as to the meaning of this term. Offerors were apparently not confused.

> impact on contract performance. Risk of unsuccessful performance is no worse than moderate.
>
> Marginal: Proposal does not clearly meet requirements and has not demonstrated an adequate approach and understanding of the requirements. The proposal has one or more weaknesses which are not offset by strengths. Risk of unsuccessful performance is high.
>
> Unacceptable: Proposal does not meet requirements and contains one or more deficiencies. Proposal is not awardable.

AR 211. The RFP warned offerors that any offeror given a rating of lower than "acceptable" for the mission support factor and all of its subfactors during Phase II would ineligible for the contract award. AR 138.

The past performance factor assesses the degree of confidence the Government has that an offeror will successfully perform the solicitation requirements based on the offeror's record of recent and relevant contract performance. AR 133. Offerors were required to submit, with their initial proposal, a list of recent and relevant contracts, each with a minimum dollar amount of $5,000,000 for equipment and related incidental services. *Id.* Recent contracts are defined as prime contracts, delivery orders, or subcontracts where the services were performed within three years of the issuance of the RFP. *Id.* Relevant contracts are those in which contract performance demonstrates that the offeror has successfully performed or is currently performing on contracts or delivery orders that encompass equipment or incidental services that are the same or similar to the requirements of the current solicitation. *Id.* The solicitation rated the relevance of the past performance contracts in the following manner:

> Very Relevant: Present/past performance effort involved essentially the same scope and magnitude of effort and complexities this solicitation requires.
>
> Relevant: Present/past performance effort involved similar scope and magnitude of effort and complexities this solicitation required.
>
> Somewhat Relevant: Present/past performance effort involved

some of the scope and magnitude of effort and complexities this solicitation required.

Not Relevant: Present/past performance effort involved little or none of the scope and magnitude of effort and complexities this solicitation requires.

AR 212. The offerors' past performance was rated as follows:

Substantial Confidence: Based on the offerors recent/relevant performance record, the Government has a high expectation that the offeror will substantially perform the required effort

Satisfactory Confidence: Based on the offerors recent/relevant performance record, the Government has a reasonable expectation that the offerror will substantially perform the required effort

Limited Confidence: Based on the offerors recent/relevant performance, the Government has a low expectation that the offeror will successfully perform the required effort

No Confidence: Based on the offerors recent/relevant performance, the Government has no expectation that the offeror will successfully perform the required effort

Unknown Confidence (Neutral): No recent/relevant performance record is available or the offerors performance record is so sparse that no meaningful confident assessment rating can be reasonably assigned.

*Id.*

The price factor is not objectively scored. Rather, the Contracting Officer is tasked with determining the reasonableness of the price, in compliance with the Federal Acquisition Regulations. *See* AR 143; 48 C.F.R. § 15.402(a) (2014).

II. Evaluation of FCN's Proposal

Evaluations of the Phase II proposals were initially prepared at the end of March 2014 by the Source Selection Evaluation Board ("SSEB"). They were reviewed by the SSEB Chair, Contracting Officer, legal advisor, and the Source Selection Advisory Council ("SSAC"), and ultimately finalized on June 4, 2014. AR 7, 448.

FCN was given an overall rating of [ ] for the mission support factor. AR 681. Within this factor, FCN's proposal was rated [ ] for the management subfactor. *Id.* [ ], relating to [ ]. AR 683. [ ] were identified. AR 683-84. For the technology subfactor, FCN was given an [ ] rating. AR 681. [ ] were identified. AR 685. Lastly, FCN was given a rating of [ ] for the small business participation subfactor. AR 681. [ ], were identified in connection with this subfactor. However, these [ ] were outweighed by FCN's [ ]. AR 687.

FCN submitted five contract references in response to the past participation factor. All five were evaluated as [ ]. AR 691-94. FCN also stated that it had [ ]. AR 697. Overall, the SSEB gave FCN a rating of [ ] for the past participation factor. AR 696. The SSEB identified [ ] relating to this factor, but did [ ], FCN's [ ]. *Id.*

FCN's proposed price was [ ], which was the [ ] price of the [ ] offerors who included price in their proposals.

The Source Selection Authority ("SSA"), Melanie Johnson, issued the competitive range determination on July 11, 2014. AR 833-87. In making her determination, she reviewed the SSAC's evaluation, and then made her own independent findings, after which determined the competitive range, which she limited to offerors who received at least a "good" rating under the mission support factor and at least "satisfactory confidence" under the past performance factor. AR 884. Once that group of offerors was identified, she further limited the competitive range to the [ ] offerors among them. AR 884. FCN, despite its low price, was not considered for the competitive range because its mission support rating was only [ ]. AR 886.[3]

The Army notified FCN that it was not included in the competitive range, and provided it with a debriefing. Following the debriefing, FCN filed

---

[3] Each offeror was assigned a three digit code during the evaluation process. FCN's code is [ ].

6

a protest with the Government Accountability Office ("GAO") on August 11, 2014. AR 20-26. FCN alleged that the agency's conclusion that FCN failed to meet the mission support and past performance requirements was incorrect, arbitrary, and an abuse of discretion. *Id.* FCN also contended that the [   ] identified with regard to its past performance rating were incorrect. *Id.* On October 31, 2014, the GAO issued a decision denying FCN's protest. AR 1157-59.

Four other offerors Dell, HP, Dynamic Systems, Inc., and Telos Corp. also separately protested at the GAO, alleging that they had been improperly excluded from the competitive range. The Army responded with corrective action allowing those offerors into the competitive range without further evaluation of their proposals. FCN, however, was not brought into the competitive range. FCN thereafter filed its first complaint in this court on December 5, 2014, protesting its exclusion.

After oral argument, the parties agreed to suspend the protest pending corrective action by the government. Counsel for defendant reported that it would take corrective action by re-scoring and re-evaluating FCN, along with Dell, HP, Dynamic Systems, and Telos. FCN therefore moved for voluntary dismissal, and the court dismissed the case without prejudice on February 25, 2015.

III. The Army's Re-Evaluation

The Army's mission support technical evaluation team ("TET") re-evaluated and re-scored the proposals of FCN, Dell, Dynamic Systems, HP, Telos, and MicroTechnologies, LLC with respect to the mission support factor.[4] It did not re-evaluate the past performance or price factors. During FCN's re-evaluation, the TET found [  ] under the management subfactor. AR 2027.[5] Its management rating remained [  ], however, as did its ratings for the

---

[4] We will only discuss the re-evaluations of FCN, Dell, and HP because those are the only re-evaluations with which plaintiff takes issue in its motion.

[5] The [  ] identified were as follows:

  [  ]

  [  ].

technology and small business participation subfactors. *Id.* The re-evaluation noted that FCN [   ] for the small business participation subfactor. AR 2010-11. FCN's overall mission support rating of [   ] remained [   ]. *Id.*

During Dell's re-evaluation, the TET credited it with [   ] under the management subfactor. AR 1971-74. The re-evaluation noted that Dell [   ] the requirements for this subfactor. AR 2006-07. However, its original management rating of [   ]. AR 1971-74. Its technology and small business ratings of [   ] also remained [   ]. AR 2006. Overall, Dell's mission support rating was [   ] in the management subfactor. AR 1971-74.

HP was credited with [   ] for the management subfactor, which prompted the Army to [   ] its subfactor rating from [   ] to [   ]. AR 2008. HP's technology subfactor remained [   ], as did its small business subfactor. *Id.* The re-evaluation noted that HP [   ] the requirements for both the management and technology subfactors. AR 2009. Overall, its mission support factor was increased from [   ] to [   ]. *Id.*

The SSA concurred with the changes to the offerors' re-evaluations. AR 2020-30. This resulted in Dell, HP, Dynamic, and Telos now meeting the SSA's original criteria for inclusion in the competitive range a mission support rating of at least [   ] and a past performance rating of at least [   ]. Rather than accepting only the [   ] offerors out of all of those with a [   ] mission support rating, she expanded the competitive range to include Dell, HP, Dynamic, and Telos. *Id.* She noted that these offerors had [   ] than the [   ] originally included in the competitive range, but found that they had [   ]. AR 2028. FCN was again left out of the competitive range. *Id.* The SSA recognized that the biggest appeal of FCN's proposal was its [   ], but because price is the least important factor, it was insufficient to give FCN a realistic chance of award because its proposal was not highly rated. AR 2029. FCN was notified of the decision on July 8, 2015, and subsequently filed this action.

### DISCUSSION

The Tucker Act, 28 U.S.C. § 1491, gives this court jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal Agency for bids or proposals for a proposed contract or to a

proposed award . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2012). FCN is an "interested party" because it is a prospective bidder whose direct economic interest would be affected by its exclusion from the competitive range.

In deciding a motion for judgment on the administrative record, we decide all issues of fact and law based upon the administrative record generated at the agency level. *See* RCFC 52.1. This court will not disrupt an agency's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706 (2012). Accordingly, great deference is given to the agency's decision. *Banknote Corp. of America, Inc. v. United States*, 56 Fed. Cl. 377, 380 (2003). This deference is even more significant when the solicitation, as here, is evaluated on a best value basis. *Id.* Additionally, the plaintiff will not prevail in a bid protest unless it shows that the error in the procurement process was prejudicial, meaning that but for the error, there is a substantial chance that plaintiff would have received the award. *Medical Dev. Int'l., Inc. v. United States*, 89 Fed.Cl. 691, 701 (2009).

Plaintiff argues that the decision not to include it in the competitive range was arbitrary and capricious. The thrust of plaintiff's argument is directed at what it views as inconsistent treatment of it as compared to Dell and HP. Plaintiff contends that, on re-evaluation, the Army failed to reasonably consider the significant advantage of FCN's price, while giving [ ] to the technical ratings of Dell and HP. Moreover, plaintiff takes the position that the Army improperly failed to recognize additional [ ] of its proposal under the management and technology subfactors. According to plaintiff, these [ ] would have yielded [ ] for these subfactors, thus allowing FCN to be included in the competitive range.

Plaintiff also takes issue with the fact that Dell and HP were given [ ] in their ratings on re-evaluation, while the Army failed to correct FCN's allegedly flawed technology and past performance ratings. According to plaintiff, this flawed past performance rating was prejudicial. For its rating, the Army identified as one of FCN's [ ] the fact that FCN did not [ ]. Plaintiff, however, argues that it did submit this information, and it therefore should not have been assigned a [ ]. Accordingly, plaintiff asks the court to grant a permanent injunction, arguing that the balance of hardships tips in its favor, and that absent an injunction, it would be irreparably harmed.

Defendant responds that its evaluation of FCN's proposal was in accordance with FAR 15.306(c). Defendant asserts that the Army properly considered price, but ultimately was within its discretion in concluding that despite FCN's low price, it did not have a realistic chance of receiving an award because it was rated only [ ] on the mission support factor. This is consistent with the RFP, which states that price is the least important evaluation factor. Moreover, defendant disputes the strengths that FCN contends it should have been credited with under the management and technology subfactors. Defendant also disagrees that plaintiff has made the showing required to entitle it to a permanent injunction, and contends that plaintiff failed to demonstrate prejudice from the alleged errors in its past performance evaluation.

Given the broad discretion afforded to a contracting officer's determination of the competitive range, we conclude that plaintiff has not established that the Army's evaluation of FCN's proposal was unreasonable or unlawful. *See Birch & Davis Int'l, Inc. v. Christopher*, 4 F.3d 970, 973 (Fed. Cir. 1993). Nor do we see any evidence of inconsistent treatment of FCN, Dell, and HP.

With regard to FCN's price, during both the original Phase II evaluation and the re-evaluation, the Army did consider all the evaluation factors. It determined that even the [ ] would not warrant an award to an offeror whose mission support rating was only [ ]. In fact, in both her original evaluation and in her re-evaluation, the SSA stated that FCN's low price was not sufficient to give it a realistic chance of award due to its mission support rating. AR 833, 2029. On re-evaluation, she further noted that price was the least important factor in this procurement, and [ ]. AR 2029. Additionally, during both evaluations, she explicitly stated that [ ]. AR 833; 2028. These decisions refute plaintiff's contention that the Army failed to consider the price factor and are entirely consistent with the RFP and with the FAR. *See* 48 C.F.R. § 15.306(c). Where the Army has considered all the evaluation factors and provided a reasonable explanation for its competitive range determination, this court will not interfere. *Birch & Davis Int'l*, 4 F.3d at 973.

In any event, during re-evaluation, HP and Dell were both given ratings of [ ] for the mission support factor. FCN, on the other hand, was rated [ ]. Plaintiff has no grounds to argue inconsistent treatment where there is a meaningful difference between its technical ratings and those of Dell and HP. In her original Phase II evaluation, the SSA noted that she would not add any

offerors whose mission support ratings were less than [ ] into the competitive range. This decision remained consistent during re-evaluation, and thus Dell and HP were allowed into the competitive range after receiving [ ] mission support ratings.

Thus, plaintiff's real problem is that it received a mission support rating of [ ]. Plaintiff acknowledges that the agency was within its discretion, when confronted by a number of proposals with mission support ratings of [ ] or higher, to limit further competition to those only with ratings of [ ] or higher. Its argument that it should have been credited with additional strengths under the management and technology subfactors merely constitutes disagreement with the Army's evaluation of its proposal, which is insufficient to establish that the evaluation was unreasonable or unlawful. The Army provided its reasoning for why it did not credit FCN with these strengths and ultimately found that FCN [ ]. AR 1980-81. Consequently, FCN was found to have met, but not exceed, the requirements for these subfactors. In contrast, the Army found on re-evaluation that both Dell and HP exceeded the requirements for the management subfactor, the most important subfactor within mission support. We therefore have no basis for second-guessing the Army's evaluations.[6]

## CONCLUSION

We conclude that the Army's decision to exclude FCN from the competitive range was neither unreasonable nor unlawful. We therefore deny plaintiff's motion for judgment on the administrative record and grant defendant's cross-motion. The Clerk is directed to enter judgment accordingly. No costs.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

---

[6] Nor can we accept plaintiff's argument that its past performance rating was flawed, which, in any event, would not have been prejudicial given FCN's mission support rating. FCN disagrees with the Army's finding that in its past contract references, [ ]. AR 629-643.

11